MILTON STONE *vs.* INHABITANTS OF HUBBARDSTON.

If a horse driven with due care by a traveller on a highway, without escaping from his control, is caused to step out of the travelled track by an object within the limits of the way, which would cause an ordinarily gentle and well broken horse to do so, whereby the traveller is brought into contact with a defect in the surface of the way, or a place on the side of the way defective for want of a railing, and so is injured, the town is liable in damages; but not so, if the shying of the horse is caused by a vicious habit, and is at an object which would not startle a horse ordinarily gentle and well broken.

On the trial of an action against a town for an injury sustained by a traveller driving a horse on a public way therein by coming in contact with a defect in the way, the defendants contended that at the time of the accident the horse was driven at an improper, unusual and unsafe speed, and called a witness who testified that he saw the plaintiff driving at the speed of ten miles per hour for the whole of the forty rods next before reaching the place of the accident; but a witness familiar with the horse testified for the plaintiff that the usual gait of the horse was not more than five or six miles per hour. *Held*, that to support their defence and corroborate their witness, as well as to contradict the witness of the plaintiff, the defendants might introduce the testimony of another witness, who saw the plaintiff pass over the first part of the forty rods, that he was then driving at the speed to which their previous witness had testified ; and that the exclusion of such testi mony was just ground of exception.

Mere slipperiness of the surface of a highway properly constructed and of no unusual slope, by reason of ice, whether occasioned by the ordinary action of rain, snow or frost, or by such travel as does not alter the form of the surface, is not a defect in the highway for which the town is liable to an action. But ice, which by reason of constant or repeated flowing of water, trampling of passengers, or any other cause, assumes such a shape as to be an obstacle to travel, may constitute such a defect.

A small brook was conducted, through a trough, from land above a highway, into a tub by the side of the way, adjoining which was a culvert to conduct off the water; but at a particular time only part of the water ran off through the culvert, and the rest overflowed the way and froze; and at that time there was a stone in the mouth of the culvert. On the issue whether the ice then constituted a defect in the way, *Held,* that evidence was admissible of the general shape and quantity of ice accustomed to be formed at the same place from the same cause; but that evidence of the exact dimensions of any mass of ice other than the one in question was immaterial. *Held, also,* that evidence was admissible of the presence, at other times, in the same position, of the same or a similar stone, which caused the water to overflow the way.

Tort under the Gen. Sts. *c.* 44, § 22, for injuries sustained from defects in a highway in Hubbardston. The declaration alleged that a part of this highway, " opposite certain watering troughs by the side thereof, was on December 17, 1865, and for twenty-four hours previous thereto negligently suffered by said defendants to be out of repair, defective and without sufficient railing; in that the travelled road was not wrought of sufficient width; in that the water ran across and with ice collected upon the surface of the travelled way; in that upon the west side of the travelled way there was an abrupt offset or embankment not properly guarded with sufficient railing or barriers; of all which the defendants had reasonable notice;" and further alleged " that the plaintiff was travelling with his horse and carriage upon said highway and using due care; that by reason of said water and ice upon said road his horse deviated to the side of the travelled way, and by reason of said embankment or sudden offset and want of sufficient railing or other barrier his carriage was overturned and himself thrown against a rock." At the trial in the superior court, before *Rockwell,* J., the jury found for the plaintiff; and the defendants alleged exceptions which the judge allowed as follows :

" The evidence showed that on the afternoon of Sunday, December 17, 1865, the plaintiff was returning from church, along the highway described, in a chaise drawn by a horse

which he was driving, when the chaise was overturned and the injuries were sustained.

" There was evidence tending to show that the defect complained of was caused by a mass of ice extending part way across the travelled part of the way and an offset by the side of the way; that the ice was formed from the water of a small stream that flowed down the hillside along the foot of which the road was constructed; that the water before reaching the travelled way was conducted by means of a trough into a tub placed by the roadside as a convenience to travellers in watering their horses; that opposite this tub a culvert was constructed across the road for the purpose of conducting the water as it flowed from the tub, and any part of the water of the stream that did not flow into the tub, across the road to the low land on the opposite side. The plaintiff testified that at the time of the accident the ice extended upon the travelled part of the way nearly to the wheel track, forming a mass of ice along the track five or six feet in length and from four to seven inches thick; that he made no measurements at the time, but gave the above as his best judgment of the extent of the ice at that time. He was also permitted, against the objection of the defendants, to testify that he, in company with three persons who had not seen the ice in the December previous, examined the ice on the same part of the road in March 1866, and that it covered the same surface as the ice of the previous December did, but that it was not so thick; that he pointed out to the persons then with him a stone against which he said he was thrown, and called their attention to the condition of the ice as it then was in March. It was not contended that the ice found there in March was the same ice that had been there in December; and two witnesses called by the defendants testified without contradiction that they examined the locality in February, and there was then no ice at all upon that part of the road. The plaintiff called two of the persons who examined the ice with him in March; and these witnesses were allowed, against the defendants' objection, to testify as to the extent of the ice on the road at the time of their examination, and to give the measurements

of the ice which they then made, and the distances from the extremity of the ice to the edge of the road wrought for travel and the outside of the location. The plaintiff was also permitted, notwithstanding the objection of the defendants, to introduce evidence as to the formation of ice on that part of the road in years previous and subsequent to the date of the plaintiff's accident; although it was in evidence that the quantity of ice depended upon the quantity of water which flowed from the hillside, and that the quantity of both varied from year to year, and from one part of the year to another, as well as upon the state of the weather.

" The plaintiff, having sworn that there was a stone in the mouth of said culvert at the time of the accident, which he contended interrupted the free flow of the water through the culvert and caused it to overflow the road, was allowed, against objection, to introduce evidence of the presence of a stone in the mouth of the culvert at times several months previous to and after the accident; and the jury were allowed to consider this evidence, notwithstanding that the defendants offered evidence to show that the stone, if there was one in the mouth of the culvert at the time of the accident, had been removed shortly after it.

" The defendants contended that the plaintiff's injuries were caused, in part at least, by his own want of ordinary care, that he knew, according to his own testimony, the situation of the road, that his horse was vicious, having a bad habit of shying, and that he was driving at an unusual and improper rate of speed at the time of the accident; and offered evidence upon all these points. The plaintiff testified that just before he reached the place of the accident he was driving at the rate of not more than five miles an hour, and that just before reaching the ice he checked the speed of his horse so that when his carriage tipped over he was not going more than four miles an hour; and his son, whom he called as a witness, testified that he had driven the horse frequently and that his usual gait was not more than five or six miles an hour. To meet this evidence, and to show that the plaintiff was driving at an improper speed and no'

using due care, the defendants called a witness who testified that he was in full view of the plaintiff and his horse for the last forty rods before reaching the place of the accident, and that they were going at the rate of ten miles an hour. The defendants then called another witness who would testify that he saw the plaintiff pass over the first part of the same forty rods spoken of by the last witness, and that in his judgment the plaintiff was driving ten miles an hour while he saw him. This evidence upon the plaintiff's objection was excluded by the court; as was also the testimony of some other witnesses, by whom the defendants offered to prove that at points within the distance of a half or three quarters of a mile before reaching the place where he was upset, but not during the last forty rods, the plaintiff was driving at least ten miles an hour.

" At the close of the evidence the defendants asked the court to instruct the jury that, if the plaintiff's horse started or shied at an object which did not constitute a defect in the road, and was thus induced to run upon a defective part of the road, where the injury occurred, and the injury would not have happened had not the horse thus started, the plaintiff cannot recover; and that, if the plaintiff's horse was frightened and caused to shy by the tub aforesaid, or ice around it, or by ice in the ditch, all outside of the travelled way, and thus the injury was caused, the plaintiff cannot recover; which instructions the court refused to give. But the court instructed the jury as follows: To sustain the action the plaintiff must prove affirmatively that a defect or want of repair in the road was the sole cause of the accident. If the negligence or want of care on the part of the plaintiff, or the vicious habits of the horse contributed to the accident, he cannot recover. The burden of proof upon all the issues in the case is upon the plaintiff. The plaintiff's theory is, that, as he was driving along with a well broken and gentle horse, his reins properly held, the horse swayed and stepped a little to the right of the track, and with a careful and proper pressure upon the reins he brought him back in whole or in part; and that then the hind wheel went off the shoulder of the road, and he was thrown out and the carriage

overturned; that, by the ice on his left encroaching upon the road, there was on the right of the travelled path only a space about seven feet wide, with an offset of about twenty inches, and steep; and that by reason of this narrowness, and this offset without any protecting barrier, the accident was solely occasioned. The defendants' theory is, that the road was wide enough and in good repair, and was not encroached upon by ice so as essentially to narrow the travelled path; that the horse shied by reason of a vicious habit; that there was no ice on the travelled path sufficient to obstruct the travel; but that there was only a wet place, partially across the road, or at most only a thin film of ice. If the accident was received by the stepping out of the travelled way by the horse, the jury will inquire what was the cause of the stepping out, if it was such as came within the limits of the highway, as would have caused an ordinary gentle and well broken horse to start and step out of the travelled way; and, if so, the fact that he stepped out will not prevent the plaintiff's right to recover. But it will prevent his right to recover, if it was a shying one, occasioned by a shying habit of the horse, at objects which do not startle gentle and well broken horses.

" To which rulings and refusals, admission and rejection of evidence, the defendants excepted."

*P. E. Aldrich*, for the defendants.

*G. F. Hoar & G. Swan*, for the plaintiff.

Gray, J. Some of the rulings excepted to relate to the question whether the plaintiff was wanting in ordinary care, and others to the question whether there was a defect in the highway for which the town was liable.

1. Upon the question of the plaintiff's care, the defendants had introduced evidence that the plaintiff's horse was vicious and had a bad habit of shying, and that the plaintiff was driving at an unusual and improper rate of speed at the time of the accident.

The fact that a horse starts or shies at an object in the highway (whether such object is or is not a defect in the way) and is thus brought in contact with a defect, arising either from want of proper repair in the surface of the highway or of sufficient

railing at the side of it, is not conclusive against the right of the driver to recover damages against the town for an injury thereby resulting to him; for the most gentle, intelligent and well broken horses will sometimes, in spite of all precautions and efforts of their driver, and yet without in any just sense escaping from his control, swerve out of their direct course to avoid a defect, or what seems to them to be a danger, in the road. The test of the town's liability in such a case has been determined by this court, upon much consideration, to be that "where a horse, by reason of fright, disease or viciousness, becomes actually uncontrollable, so that his driver cannot stop him, or direct his course, or exercise or regain control over his movements, and in this condition comes upon a defect in the highway, or upon a place which is defective for want of a railing, by which an injury is occasioned, the town is not liable for the injury, unless it appears that it would have occurred if the horse had not been so uncontrollable; but a horse is not to be considered uncontrollable, that merely shies or starts, or is momentarily not controlled by his driver." *Titus* v. *Northbridge*, 97 Mass. 258. *Horton* v *Taunton*, Ib. 266 note. *Fogg* v. *Nahant*, 98 Mass. 578.

In the case at bar, there was no evidence tending to show that the horse had escaped from the plaintiff's control. The instructions requested were therefore rightly refused; and the instructions given afford no just ground of exception. Though not quite clearly expressed, they must fairly be understood to mean that, if the shying of the horse was occasioned by a vicious habit and was at an object which would not have startled a gentle and well broken horse, the plaintiff could not maintain the action; but that, if the object which caused the horse to step out of the travelled path was within the limits of the highway and would have caused an ordinarily gentle and well broken horse to do so, the fact that he so stepped out would not prevent the plaintiff from recovering against the town.

2. One mode of proving that a traveller was driving at an unusual, improper and unsafe rate of speed is by witnesses who saw him at or near the time and place in question. The distance of time and place in relation to which such evidence shall

be admitted must to a considerable degree be left to the discre tion of the judge presiding at the trial ; and we are not prepared to say that the exclusion of evidence of the rate at which the plaintiff was driving half or three quarters of a mile before reaching the place of the accident would justify this court in setting aside the verdict. But to limit such testimony to witnesses who were looking at the driver at the very moment and spot of the accident would render it practically unavailable. And we are clearly of opinion that the testimony of a witness, who saw the plaintiff pass over the first part of the forty rods next before the spot where the accident happened, that he was then driving at the rate of ten miles an hour, was wrongly excluded. It directly tended to corroborate another witness, previously called by the defendants, who had testified that he saw the plaintiff driving at that rate for the whole of the forty rods next before reaching the place of the accident; and to prove the rate at which the plaintiff was driving within one eighth of a mile, or three quarters of a minute, before the accident; as well as to show that the testimony of the plaintiff's son that the usual gait of the horse was not much more than half as fast was inaccurate, or, if that testimony was true, that either the horse or the driver was unusually excited upon this occasion. For the exclusion of this testimony, the exceptions must be sustained and a new trial had.

3. The defects in the condition of the highway, alleged in the declaration, were, first, an accumulation of ice upon the surface of the highway, leaving the travelled path too narrow, and, second, a want of suitable railing opposite. The extent to which ice may constitute a defect in a highway, for which a town shall be liable, has been defined and established by recent decisions. Mere slipperiness of surface of a highway properly constructed and of no unusual slope, whether occasioned by the ordinary action of rain, snow and frost, or by such travel as does not alter the form of the surface, is no more a defect in the highway, in the sense of the statute, than moisture or mud upon a flagstone or sidewalk. But if ice, by reason of constant or repeated flowing of water, trampling of passengers, or any other cause

assumes such a shape as to form an obstacle to travel, the fact that it is also slippery does not make it the·less a defect in the highway. *Stanton* v. *Springfield,* 12 Allen, 566. *Hutchins* v. *Boston,* 12 Allen, 571 note, and 97 Mass. 272 note. *Johnson* v. *Lowell,* 12 Allen, 572 note. *Nason* v. *Boston,* 14 Allen, 508. *Luther* v. *Worcester,* 97 Mass. 268.

There was evidence that the ice complained of in this case was formed from the water of a stream conducted through a trough into a tub for watering horses, and thence in part passing through a culvert under a highway and in part overflowing the road. Evidence as to the general shape and quantity of ice which was accustomed to be formed at the same place from the same cause was competent for the purpose of showing whether the accumulation of ice at the time of the accident was of such a character as to constitute a defect in the highway, but for no other purpose. The exact dimensions at any other time of a mass of ice which was admitted not to be the same which existed at the time of the accident was immaterial for any purpose, and incompetent to corroborate the plaintiff's testimony, or to serve as a measure of the width of the residue of the road at the time of the accident. Upon the new trial, evidence of this character may be admitted under such restrictions and instructions as to confine it to its legitimate object.

4. The evidence that there was a stone in the mouth of the culvert, which caused the water to overflow the road, tended to show the effect of a stone in that position in producing an accumulation of ice in the highway, and was therefore admissible, in connection with evidence that the same or a similar stone was in the same position at the time of the accident, to show the cause and the character of the condition of the highway. The evidence introduced by the defendants that such a stone· had been removed since the accident would seem rather to support than to contradict the plaintiff's theory, and certainly did not render the evidence introduced by him on this point incompetent.　　　　　　　　　　　　　　　　*Exceptions sustained.*