## GEORGE W. BALDWIN *vs.* THE GREENWOODS TURNPIKE COMPANY.

A traveller sustaining an injury by reason of a defect in a highway attributable to the negligence of the corporation bound to maintain it, is not barred of his right to recover by reason of the fact that on his own part an accident has contributed to the injury, if it is in no way attributable to his own negligence.

And it does not affect the case that the accident occurred upon another road over which the defendants had no control.

It is not necessary that ordinary care should have been exercised by the plaintiff at the very time and place of the injury, if such accident has rendered the exercise of such care impracticable.

The plaintiff's horse driven by his servant in his carriage along a public highway in the exercise of ordinary care, became frightened by the breaking of the carriage in consequence of a defect for which no negligence was attributable to the plaintiff, and ran furiously, throwing out the driver, soon after which he left the highway and passed over private property to and upon a turnpike road, where, still running furiously, he fell over the side of a bridge by reason of a defect in the railing and was injured, such defect being attributable to the negligence of the turnpike company. Held that the turnpike company was liable for the injury.

A traveller is not responsible for a secret defect in his carriage or harness, where there has been no want of ordinary care on his part in relation to it.

CASE, for an injury from a defective bridge of the defendants, a turnpike company; brought to the Superior Court in Litchfield County, and tried to the jury on the general issue. before *Granger, J.*

On the trial it was proved and admitted that on the 21st day of January, 1870, one Hartrick was driving the horse of the plaintiff on a town road in the town of Norfolk, in a buggy belonging to the plaintiff, and that while so driving, being on slightly descending ground, through some secret defect, in relation to which neither the plaintiff nor Hartrick was in fault, the clip or iron band which attached the end of one of the shafts to the axle, broke and let the shaft with the cross-bar of the shafts down upon the horse's heels. The horse kicked and began to run, and Hartrick in attempting to rein him to one side of the road, was himself thrown out of the buggy. The horse then, freed from any control of a

driver, ran more swiftly, went around a school house standing by the side of the town road, and coming out again upon the road, ran into a large two-horse lumber wagon standing near the road side. By this collision the other shaft was broken from the buggy, and the horse, with only the shafts and cross-bar attached to him, continued to run furiously down a hill, and ran upon the defendants' turnpike and upon a bridge of the defendants, over the side of which he fell and was so injured as to become worthless. The horse was on the defendants' road only about thirty feet before coming to the bridge, and only about fifty feet upon their road at all. The place where the clip broke was on a town road over which the defendants had no control, and for which they were not responsible, and was some eighty or ninety rods from the defendants' road. The place where Hartrick was thrown out was on the town road, and was some seventy or eighty rods from the defendants' road. After Hartrick was thrown out the horse was wholly free from any guidance whatever, and ran in the excited and frightened manner above described. It was also admitted that when the horse ran around the school-house as above stated, he went outside of the limits of any highway.

Hartrick testified that he could have controlled the horse if he had not been thrown out of the buggy. There was other evidence tending to prove the same thing. There was no evidence whatever to the contrary.

The plaintiff introduced evidence tending to show, and claimed that he had proved, that the defendants' bridge was defective for want of a suitable railing, and that the injury would not have happened if there had been a sufficient railing on the south side of the bridge.

Upon these facts the defendants claimed that the plaintiff was not entitled to recover, because he had not shown that he was in the exercise of due care at the time the injury happened, and that from the nature of the circumstances he was precluded from exercising such care, and asked the court in writing to charge the jury " that in order to entitle the plaintiff to recover, he must show that he was in the exercise of due care *at the time* the injury was received ; and that if he

did not *at the time of the injury* exercise such care, even though prevented by accident from so doing, he could not recover."

The judge read the first part of this request in his charge, and stated to the jury that that was the law. He then read the remainder, and said to the jury, "I do not understand that the law goes to this extent. You are to look at all the circumstances under which Hartrick was placed at the time, and if you find that he did all that a reasonable and prudent man could do, situated as he then was, it will be in my judgment a sufficient compliance with the rule of the law as I have stated it to you."

The court also charged the jury that in order to entitle the plaintiff to their verdict, they must find that the defendants' bridge was defective for the want of a sufficient railing, and that the injury to the horse occurred through such want of a railing.

The defendants further requested the court, in writing, to instruct the jury, "that if they should find that the injury complained of happened to the horse while he was out of the reach and control of the driver, running at large, wildly, excited by fear, and under no guidance, the plaintiff was not entitled to recover." The court did not so instruct the jury, but said to them that this request appeared to be but an amplification of the previous one, upon which he had already spoken, and that if they should find that the injury resulted from the negligence of the defendants in not providing a suitable railing to their bridge, and that the plaintiff's driver was doing all that a reasonably careful man could do under the circumstances of his situation, the simple fact that the horse was free from the control of the driver at the moment of the injury would not preclude the plaintiff from a right to their verdict.

The defendants also asked the court to charge the jury, "that as the efficient procuring cause of the injury happened wholly off their road and on a town highway, they were not liable; and that as it appeared that the horse when going around the school-house went entirely outside the limits of any highway, the defendants for such reason were not liable."

The court did not so instruct the jury, but charged them that if the injury to the plaintiff's horse happened, as claimed by him, through the want of a sufficient railing on the defendants' bridge, the fact that the accident, which in the succession of events was the first cause leading to such injury, happened outside the limits of the defendants' road, would not prevent his recovery; nor the circumstance that the horse in running went entirely off the limits of any highway.

The jury rendered a verdict for the plaintiff, and the defendants moved for a new trial for error in the charge of the court and in the refusal to charge as requested.

*G. C. Woodruff* and *Andrews,* in support of the motion.

1. The rule is that a plaintiff seeking to recover for an injury arising from a defective highway or bridge, must show that he exercised due care to avoid it. This exercise of due care the plaintiff must show affirmatively and as a part of his case. To state the rule conversely—the liability of a town or corporation for an injury arising from a defective highway or bridge, only begins at the point where due care ceases to be a protection from injury by reason of such defect. If it should appear that the exercise of this due care would have avoided the injury, then the plaintiff cannot recover; because, as it is usually stated, the plaintiff, in such a case, "contributes to his own injury." *Birge* v. *Gardner,* 19 Conn., 507 ; *Weeks* v. *Conn. & R. Island Turnpike Co.,* 20 id., 134 ; *Neal* v. *Gillett,* 23 id., 437, 444 ; *Fox* v. *Town of Glastonbury,* 29 id., 204; Angell on Highways, § 345; 1 Hilliard on Torts, ch. 4, § 5.

2. This rule requires that care be exercised at the very time when, and place where, the injury happens. 1 Hilliard on Torts, ch. 4, § 2 ; *Calkins* v. *City of Hartford,* 33 Conn., 57 ; *Thorp* v. *Town of Brookfield,* 36 id., 320; *Bronson* v. *Town of Southbury,* 37 id., 199 ; *Congdon* v. *City of Norwich,* id., 414; *Landolt* v. *City of Norwich,* id., 615 ; *Hyde* v. *Jamaica,* 27 Verm., 443 ; *Palmer* v. *Andover,* 2 Cush., 600 ; *Davis* v. *Dudley,* 4 Allen, 557 ; *Blodgett* v. *City of Boston,* 8 id., 237 ; *Titus* v. *Northbridge,* 97 Mass., 258 ; *Moore* v.

Baldwin v. Greenwoods Turnpike Co.

*Abbott*, 32 Maine, 46; *Farrar* v. *Greene*, id., 574; *Moulton* v. *Sanford*, 51 id., 127.

3. The charge finds no support in those cases which decide that a plaintiff may recover even though an accident contribute to the injury. All those cases require that due care be exercised at the very time of the injury. *Hunt* v. *Pownal*, 9 Verm., 411; *Clark* v. *Barrington*, 41 N. Hamp., 44; *Winship* v. *Enfield*, 42 id., 197; Shearm. & Redf. on Negligence, § 416.

4. The charge given, that the accident happening outside the limits of the defendants' road did not prevent the plaintiff's right of recovery, was wrong. It is found that the defendants were not responsible for the town road. *Rowell* v. *City of Lowell*, 7 Gray, 100; *Kidder* v. *Dunstable*, id., 104; *Richards* v. *Enfield*, 13 id., 344.

*Graves* and *E. W. Seymour*, contra, cited *Clark* v. *Barrington*, 41 N. Hamp., 44; *Tucker* v. *Henricker*, id., 317; *Winship* v. *Enfield*, 42 id., 197; *Hunt* v. *Pownal*, 9 Verm., 411; *Kelsey* v. *Glover*, 15 id., 708; *Palmer* v. *Andover*, 2 Cush., 600; *Mandershied* v. *Dubuque*, 10 Am. Law. Reg., Aug. 1871, p. 526; *Angell* on Highways, §§ 295, 299; Shearm. & Redf. on Negligence, §§ 416 and note, 417.

MINOR, J.* A servant of the plaintiff was driving his horse before a carriage on a public highway in the town of Norfolk, over which the defendants had no control, and which was then without defect. While so driving, from some secret defect, and without fault on the part of the plaintiff or his servant, the iron band attaching the end of one of the shafts to the axle broke, and the shaft, with the cross bar, fell upon the horse's heels. The horse, very much excited and frightened, at once commenced to run, and in a short time the servant, in efforts to restrain him, was thrown from the carriage; after which the horse, with great speed and without control,

---

* Judge MINOR of the Superior Court, sat in the case in the place of Chief Justice SEYMOUR, who having been consulted in the case when at the bar, did not sit.

ran from the public highway upon private property outside of the limits of any highway, and from thence upon the defendants' turnpike, passing on to the turnpike at a point about thirty feet distant from one of the defendants' bridges, which they were bound to keep in repair. The horse, still excited and without control, continued his course on the turnpike, and on to the bridge, and having passed about twenty feet thereon, was injured by reason of falling from the side of the same on account of a defect in the railing, which the defendants had carelessly and negligently failed to keep in proper repair.

The plaintiff's servant was thrown from the carriage, while on the public highway, and at a place about eighty rods distant from the turnpike.

There is nothing in the case showing that the horse was vicious or unfitted to encounter the risks of ordinary public travel, nor that the plaintiff or his servant was negligent in not knowing of the secret defect in the carriage, nor that there was any negligence or want of reasonable care on the part of either, which at all contributed to the injury. But it does appear that the defendants' negligence in not keeping the railing of their bridge in proper repair, combined with an accident for which neither party was responsible, was the cause of the injury.

Under these circumstances who ought to sustain the loss, the plaintiff or the defendants ?

The defendants did not seriously urge the secret defect as absolving them from liability, and, as we think, very properly ; for a traveller cannot be regarded as an insurer of the strength of his carriage and harness at all times and under all circumstances. The most that can be required of him is, that he exercise ordinary care and prudence with reference to them in their purchase and use, and in the attention necessarily to be given to them in order that he may pass safely over highways and bridges not in a defective condition. In this regard it appears that the plaintiff performed his entire duty.

While essentially admitting this, the defendants claim that the plaintiff, seeking to recover damages for the injury, must

show that he exercised due care to avoid it at the *very time when,* and the *place where,* the injury happened; and they deny his right to recover in this case because by accident he was, *then* and *there,* prevented from exercising any care, and consequently contributed to his own injury.

This claim brings into consideration the question, whether the defendants are relieved from liability for an injury caused by their negligence, combined with an accident for which no responsibility attaches to either party.

The plaintiff performed no negligent act, nor can we see that he failed to do any thing by the performance of which the injury might have been avoided; he was providentially prevented from acting. This falls far short of that contributory negligence which excuses the defendants.

We may conjecture that if the servant had remained with his horse and continued in control of him, the injury might have been avoided.

The failure of a traveller to be continually present with his team up to the time and place of injury, when that failure proceeds from some cause entirely beyond his control, and not from any negligence on his part, ought not to impose upon him the loss from such injury, particularly when the direct cause of the same is the negligence of some other party; the loss should be charged upon the party guilty of the first and only negligence with reference to the matter.

In our judgment the proper rule is. this:—If the plaintiff is in the exercise of ordinary care and prudence, and the injury is attributable to the negligence of the defendants, combined with some accidental cause, to which the plaintiff has not negligently contributed, the defendants are liable.

Nor will the fact that the horse of the plaintiff was uncontrolled for some distance before the injury, change or in any way affect the liability of the defendants.

The statute laws of our state impose upon towns and corporations the duty to keep their highways and bridges with sufficient railings in suitable repair. This is a positive duty, and the safety of the travelling community requires that it should be rigidly enforced. When they have been almost

criminally remiss in the performance of this duty, and injuries happen from the insufficiency of their bridges or highways, they ought not to escape the consequences of such injuries unless upon the plainest principles of law. While we agree that the defendants were not bound to provide such railings for their bridges as would restrain all uncontrolled or unmanageable animals passing over the same, we yet hold them to their duty with reference to sufficient repairs and to their liability for injuries occasioned by want of the same.

The questions arising in this case have been before the courts of some of our sister states, and the weight of authority seems to be in favor of the result to which we have come.

In Maine it has been holden that a town or corporation is not liable under circumstances similar to those of the present case.

In Massachusetts there have been decisions somewhat conflicting, but the law seems now to be settled that the defendants are holden except when the team becomes unmanageable outside of the limits of their highway, or from fright at some object which is not a defect in the same.

In Vermont the adjudications lead logically to the conclusions to which we have come. In *Hunt* v. *Pownal*, 9 Vermont, 411, the learned Judge Redfield, in giving the opinion, says :—" In every case of damage occurring on the highway, we could suppose a state of circumstances in which the injury would not have occurred. If the team had not been too young or active, or too old, or too headstrong, or the harness had not been defective, or the carriage insufficient, no loss would have intervened. It is to guard against these constantly recurring accidents that towns are required to guard in building highways. The traveller is not bound to see to it that his carriage and harness are always perfect, and his team of the most manageable character and in the most perfect training, before he ventures upon the highway. If he could always be sure of this he would not require any further guaranty of his safety unless the road were absolutely impassable. If the plaintiff is in the exercise of ordinary care and prudence, and the injury is attributable to the in-

sufficiency of the road conspiring with some accidental cause, the defendants are liable."

The charge of the judge in the court below was substantially in accordance with these views. A new trial is therefore not advised.

In this opinion the other judges concurred.