## HIRAM W. LANE, RESPONDENT, v. JOSIAH H. WHEELER AND OTHERS, COMMISSIONERS OF HIGHWAYS, ETC., APPELLANTS.

*Negligence — duty of commissioners of highways, in erecting barriers at unsafe bridges— they are not liable for injuries sustained by horses while running away.*

The plaintiff's horses, which were hitched to a wagon, escaped from him, ran for a considerable distance along a highway, and from thence upon a bridge where one of the horses was so injured as to render it necessary to kill him. The injury was occasioned by a hole left in the bridge by the removal of a plank near the end thereof. The bridge was out of repair and not in a fit condition for public use, and the commissioners while preparing to have the necessary repairs made had removed the said plank and used the same in erecting a barricade to warn any person from driving a team upon the bridge and to obstruct their passage over it. There was another bridge near the defective one over which teams could pass.

*Held,* that the commissioners were guilty of no negligence which rendered them liable for the loss sustained by the plaintiff.

That in placing obstructions to prevent the passage of teams over the bridge they were not required to provide against an injury to misguided horses running away, and to erect a barrier strong and high enough to stop them.

APPEAL from a judgment in favor of the plaintiff, entered upon a verdict rendered in the Chautauqua County Court.

*C. R. Lockwood*, for the appellants.

*Marvin Smith*, for the respondent.

BRADLEY, J. :

On the 2d day of May, 1879, the plaintiff's horses hitched to a wagon escaped from the plaintiff, ran away, and a considerable distance on to a highway bridge in the town of Carroll, county of Chautauqua, and one of the horses was so injured as to cause its death. The defendants were then commissioners of highways of that town. This action is brought to recover for the loss of the horse which the plaintiff alleges was occasioned by the negligence of the defendants in permitting the bridge to remain out of repair and in an unsafe condition. The evidence relating to the cause, circumstances and manner of the escape of the horses from the plaintiff presented the question of fact whether he was chargeable with negligence. The evidence supported the conclusion of the jury that he was without fault. The immediate cause of the injury was the escape and runaway of the horses. Assuming that the defendants were chargeable with negligence, the question of liability in such case has had diversity of views of the courts in other States. And our attention has not been called' to any in this State founded on a similar state of facts. In *Ring* v. *City of Cohoes* (77 N. Y., 83), the cases are reviewed and the rule adopted with apparent approval is " that when two causes combine to produce an injury to a traveler upon a highway, both of which are in their nature proximate — the one being a culpable defect in the highway, and the other some occurrence for which neither party is responsible — the municipality is liable provided the injury would not have · been sustained but for such defect." And this proposition is repeated in *Ehrgott* v. *Mayor* (96 N. Y., 283).

In *Baldwin* v. *The Greenwoods Turnpike Company* (40 Conn., 238; 16 Am. R., 33), the defendant was held liable for an injury to a runaway team which had escaped from the driver and were injured on a defective bridge which it was the duty of the defendant to keep in repair. The cases of *Hunt* v. *Pownal* (9 Vt., 411); *Houfe* v. *Town of Fulton* (29 Wis., 296; 9 Am. R., 568); *Page* v. *Bucksport* (64 Me., 51; 18 Am. R., 239); *Hull* v. *City of Kansas* (54 Mo., 598; 14 Am. R., 487); *Hey* v. *Philadelphia* (81 Penn. St., 44; 22 Am. R., 733), tend in the same direction, with the difference

in the facts that the drivers were with the teams when the injuries were sustained, but lost control of their movements for the time being; and such was the case of *Ring* v. *City of Cohoes.*

In *Palmer* v. *Andover* (2 Cush., 600) the town was held liable for an injury occasioned by a defect in the highway, although the primary cause was a disconnected accident. Which case is approved in *Davis* v. *Dudley* (4 Allen, 557) and distinguished from the latter, where it was held that the plaintiff could not recover because the horse broke away and escaped from the driver before it was injured. And the same distinction is observed in *Stone* v. *Hubbardston* (100 Mass., 49), where the horse escaped from the control of the driver, but did not get away from him, and was injured by a defect in the highway outside the traveled track.

In *Kennedy* v. *Mayor* (73 N. Y., 368) the right to recover for an injury, occasioned by defect in a highway, to a horse which has escaped from the driver and is running away, is by *dictum* questioned.

The proposition stated and apparently adopted in the Ring case is sufficiently broad to cover the situation in the one at bar, and to charge the defendants with liability if the loss suffered by the plaintiff was occasioned by their negligence. The question of the negligence of the defendants as applicable to the injury sustained is the more difficult one in this case. The general propositions presented by the charge of the court and by the argument of the learned counsel for the plaintiff in respect to the duties of the defendants as commissioners of highways, and their liabilities for injuries caused by their negligence in not keeping the highways and bridges of their town in repair are well and correctly stated. They are required to use reasonable care for that purpose. And after the continuance of defective condition for such length of time that reasonable vigilance on their part will enable them to ascertain it, the jury may infer and charge them with notice on the principle that what the commissioners by the exercise of required diligence would have learned they ought to have observed. The question of notice arising from lapse of time is usually one for the jury having in view all the circumstances. This bridge rested on piles at the ends and center. The two defendants Wheeler and Thayer were commissioners the year before, and by the report of February, 1879,

in which they joined with the third, this bridge was referred to as out of repair. The defendant Adams shortly after became commissioner, and early in April the defendants' attention was called to its defective condition. The main difficulty with the bridge was that the piles supporting one end were yielding and leaning in towards the stream, and it had settled there some. The reparation required that new piles be driven there to give support to that end of the bridge. In the judgment of the defendants the bridge had become unsafe, until repaired, for use by the public. And sometime after the middle of April they caused notices to be posted at either end of it warning people of the danger of passing over it; and for a week or ten days preceding the time in question obstructions were placed at or near each end of the bridge to deter passage over it with teams, and a portion of the time at least this obstruction or barricade was produced in part by a plank taken up at or near each end, thus making a hole or opening in the floor of it and so placed that persons driving toward the bridge could see the difficulty of passage before entering upon it. There was another bridge over the creek near by on which passage could be had so that no very great inconvenience was temporarily suffered by the traveling public.

In the meantime the commissioners were proceeding to obtain the requisite timber and a pile-driver to make the repair. The evidence tended to prove, and for the purposes of this case it will be assumed, that the injury to the horse was caused by the hole in the bridge, produced by the taking up the plank for the purpose before mentioned. The dilapidated condition of the bridge, which required repair by reason of the defective support, in no manner directly occasioned or contributed to the accident and injury to the horse. They were wholly produced by the means used to barricade the bridge and prevent passage over it. The fact that the defendants were chargeable with negligence for not repairing the bridge, cannot charge them with liability unless that negligence caused the injury. If the bridge had given way by reason of their omission to supply support to the end needing it, then the delay in doing it might have presented a different question. It may be said that if they had repaired the bridge before then, the obstructions to the passage would have been removed and the injury not have been suffered at the time in question, but that is a remote consequence and the failure

to repair the bridge cannot be thus applied to this calamity. The matter of delay in repairing might afford a different remedy against the defendants for failure to perform duty. (*Day* v. *Crossman*, 1 Hun, 570.) The fact that the bridge required repair is out of the case, except so far as it bears upon the propriety of the act of obstruction of passage over it and the manner in which it was done.

The question arises, therefore, whether the defendants were chargeable with misconduct or neglect in respect to the means used to stay and prevent passage over this bridge. This question was not very distinctly presented by the court to the jury, nor very definitely by exception taken on the trial. Motion for nonsuit was, on the ground that the defendants were not guilty of negligence, and after the close of the evidence the court was requested to so hold, and exceptions were taken.

The question is fairly within the propositions presented by the exceptions taken, and requires consideration. We must assume that the defendants in good faith believed that the bridge had become unsafe. If they had left the way open to the public to pass over the bridge and without notice of its condition, they would have failed in their duty and might have been subjected to the consequences of injury occasioned to a traveler by reason of the defective condition. They therefore were not only justified, but it was their duty to notify the public of the danger of using the bridge, and to apply means to obstruct and prevent passage over it until repaired; that was the purpose of the condition which caused the injury. The plank taken up and a rail were so placed as to produce and show an obstruction to passage over the bridge; and they clearly indicated the purpose in view. The defendants in good faith (as we assume) sought by this means to guard the traveler against danger which might come from the use of the bridge. And upon the evidence, as it appears in the record before us, it is assumed that this barricade was effectual to warn any person driving a team to the bridge and to obstruct his passage on to it. The question arises whether the defendants were required to do anything more to protect the public against danger there, intermediate then and repair. The defendants were required to provide against those accidents which by the exercise of reasonable care and judgment might be anticipated. They could assume that persons would drive over the

bridge unless some means were used to prevent it, but in placing obstructions there they were not required to provide against an injury to unguided horses running away, and to erect a barrier strong and high enough to stay their fury, or the violence of their ungovernable speed. The purpose of the defendants was legitimate. The bridge was within their supervision and they were justified in obstructing passage over it in view of its condition ; and if they did it in such manner as to effectually advise all persons that they could not pass, and to prevent their passage with teams, that would seem to be sufficient. (*Parker* v. *City of Cohoes*, 10 Hun, 531 ; *Sevestre* v. *Mayor*, 15 J. & S., 341 ; *Doherty* v. *Waltham*, 4 Gray, 596.) The plank was removed from the floor to accomplish this and make the barrier more effectual. This did not increase the danger to the traveler if the barricade was otherwise such as to advise him, but tended to make apparent the difficulty and impropriety of passage. They might have barricaded the bridge with other material and left the floor intact, but for the purposes of protection of the public that would seem to have been unnecessary. The law must locate a line somewhere within which negligence is confined and beyond which public officers have protection. That within their official province, which by the exercise of reasonable diligence on their part may be anticipated and guarded against, comes within their duty; and the failure to exercise that care may charge them with negligence and with liability for the consequences to others. When commissioners of highways have given protection to the use of the highways by the traveling public, having in view all the contingencies and accidents which may be anticipated to arise by such use, they have accomplished what their duties reasonably impose. That horses may escape from the driver and run away is possible, but the consequences of such an accident are not within the range of conjecture, nor can such an event be an anticipated one for which provision is to be made, as distinguished from that which the ordinary and usual means of travel may require. If the latter be not observed, and in consequence an escaped and runaway team is injured, there may be liability within the rule before mentioned. But beyond that the commissioners are not liable for consequences which may result from the unusual event of an unrestrained team running away. (*Kennedy* v. *Mayor*, 73 N. Y., 368 ;

*Ring* v. *City of Cohoes*, 77 id., 86 ; *Moss* v. *Burlington*, 60 Iowa, 438 ; 46 Am. R., 82 ; *Hey* v. *Philadelphia*, 81 Penn. St., 44 ; 22 Am. R., 733, 735.)

It is a recognized fact that bridges become defective and must be repaired and that a temporary suspension of travel over them is a necessity. The duty then is with the constituted authorities in charge to barricade the passage so as to protect the traveler. *(Jacobs* v. *Bangor*, 16 Me., 187 ; 33 Am. Dec., 652.) If the defendants did that in this case there is no apparent reason to charge them with liability for the injury in question. That would cover the necessity and meet the requirement arising from all that could reasonably be anticipated. The view taken of the evidence before us is that it does not appear that the commissioners did not do all that reasonable diligence required of them to prevent passage over the bridge, or that the manner in which it was done endangered the safety of the public travel. And therefore they are not charged by the evidence with negligence as applied to the injury sustained by the plaintiff. For the purposes of this review the act of producing the obstruction on the bridge in the manner in which it was done has been treated as that of the defendants, and all of them, and we have not deemed it necessary to examine the question presented by the evidence in that respect. In *Requa* v. *Rochester* (45 N. Y., 130) the defendant was held liable for injury occasioned by a defect in a bridge produced by the removal of a plank by some person a sufficient time before the accident to justify the inference of notice to the defendant. There the bridge was not otherwise out of repair, and it was permitted to remain open to the public travel without interruption by defendant. Another trial, with attention to the question in respect to the means adopted to stop the use of the bridge by the public and the manner in which it was done, may develop some features which will present a question of fact for the jury.

The judgment should be reversed and a new trial granted, costs to abide event.

HAIGHT and CHILDS, JJ., concurred.

Judgment reversed and new trial ordered, costs to abide the event.