ZENAS J. WARD vs. THE TOWN OF NORTH HAVEN.

A pair of horses were running along a highway in fright and one of them was killed by falling from a bridge that was defective from want of a railing. Held not to be a decisive fact, against the right of the owner to recover damages of the town, that the horses, at the time they took fright, were hitched outside of the highway upon the owner's premises, and broke loose and ran upon the highway.

ACTION upon the statute with regard to highways and bridges, for an injury from a defect in a bridge of the defendant town; brought to the Court of Common Pleas of New Haven County, and tried to the jury, upon the general issue, before *Robinson, J.*

Upon the trial the plaintiff offered evidence to prove, and the defendants did not deny, that on the 15th of October, 1874, he was the owner of a span of horses, which, on that day, after using them on his farm, he hitched by a rope to the post of his woodshed, about twelve feet distant from the line of the highway and on his own land; that the place where they were hitched was not separated from the highway by a fence or other enclosure; and that, from some unknown cause, the horses became frightened, broke away, and ran out into the highway, and down a steep hill upon the bridge in question, (which bridge had no railing), and there one of them was killed by falling off from the bridge.

The defendants thereupon asked the court to charge the jury that, in order to entitle the plaintiff to recover, it must appear that at the time the horses broke away and ran they were in use on the highway for ordinary purposes.

The court charged the jury on this point as follows: "If you find that the horse was killed by running or being thrown off from this bridge, and if you find that a sufficient railing on the bridge would have prevented this accident, you will next inquire whether, at the time the accident occurred, the plaintiff was using the highway and bridge for the legitimate purposes of travel. As I understand it, the law is so that a town is only responsible for what may happen when the highway is being used for purposes of travel. If while traveling along the road, or in any other way using the highway for legitimate purposes, an accident happens without the negligence of the traveler, and from a defect in the highway, the town is liable. But if a man keeps his horse in a pasture, or has it hitched upon his own premises out of the highway and not in connection with his use of the highway for the purposes of travel, and it escapes and runs away and is killed on the highway by reason of a defect therein, the town is not liable.

"If you find that the horse was killed by running or being thrown off from this bridge, and if you also find that a sufficient railing on this bridge would have prevented the accident, and find that the horse was on the highway for legitimate purposes of travel, you will next inquire whether the plaintiff himself exercised ordinary care in reference to these horses. If he was himself negligent and his negligence contributed to the injury, then he cannot recover; but if he was in the use of ordinary care, and in spite of his ordinary care these horses, while being used on the highway for ordinary purposes of travel, took fright and ran away, and one of them was killed for want of a sufficient railing on this bridge, then the defendants would be liable."

The cause was committed to the jury about noon. During the afternoon of the same day the jury came in and stated they were unable to agree, whereupon the judge read to them a second time so much of the charge as is given above, and directed them to retire again. Some time after the jury were called in by the judge, and it being stated by them that there was no prospect of an agreement, they

were instructed by the court as follows, and directed to retire again :

" Your decision upon one question of fact may decide this ·case, and that is, where these horses were when they started and got beyond the plaintiff's control. Were they at the time they took fright and ran away, occupying the highway for the ordinary and legitimate purposes of travel ? If they were not, if they were hitched on the plaintiff's land off the highway, and being frightened there, got away and ran into the highway, and this one was killed, then the town is not liable, and you must render a verdict for the defendants."

The jury having returned a verdict for the defendants, the plaintiff moved for a new trial for error in the charge of the court.

*J. T. Platt*, in support of the motion.

1. No such rule as that laid down by the court below is found in our statute. On the other hand, the adoption of such a rule by the courts would be a judicial repeal of the statute. The duty of building and keeping in repair highways and bridges is imposed upon the towns by the statute. Gen. Statutes, Rev. 1866, p. 492, sec. 1. And section 8 provides that " good and sufficient railing " shall be kept up on the sides of bridges, and that " if any person shall suffer any damage in his person or property, by reason of the want of any such railing or fence, or of any defect in the same, such town, person, persons, or corporation, shall pay to him who shall so suffer, just damages." It was conceded that the town had violated its duty ; that no railing whatever had been placed upon the bridge. It was not denied that the horse met his death at the bridge. If, in addition to these facts, it had been found by the jury that the plaintiff was in the exercise of due care, that the horse was thrown from the bridge and killed by reason of the want of a good and sufficient railing thereon, and was not vicious, then it is submitted that the plaintiff was, under this statute, entitled to. "*just damages.*"

2. The case at bar is within the principle of *Baldwin* v.

*Greenwoods Turnpike Co.*, 40 Conn., 238 ; and the instructions of the court below are in direct conflict with the doctrine of that case. Those instructions were based upon the authority of the case of *Richards* v. *Enfield*, 13 Gray, 344. This case was commended to the attention of this court in the case of *Baldwin* v. *Greenwoods Turnpike Co.*, and its doctrine, in effect, repudiated. As is well known, the doctrine of the Massachusetts courts in highway cases is, in many points, in conflict with our own. Based, as they are, upon the peculiar language of the Massachusetts statute, they can have little or no application here. In the case referred to, upon which the court below relied, Bigelow, C. J., giving the opinion of the court, says, " The duty imposed on towns in respect to the repair of highways is, that they should keep them '*safe and convenient for travelers, with their horses, teams and carriages.*' The liability of towns for defects or want of repair in highways, is intended to be commensurate with this duty." The same doctrine is reiterated in a subsequent case. *Blodgett* v. *City of Boston*, 8 Allen, 238. The Maine statute contains language of similar import, and the courts of that state apply the Massachusetts doctrine. *Stinson* v. *Gardiner*, 42 Maine, 258. There is no provision like this in our statute, making the Massachusetts and Maine cases entirely inapplicable here.

*L. B. Morris* and *J. W. Alling*, contra.

Highways are built and kept in repair, only for purposes of *public travel.* Towns are not responsible for injuries arising from the use of the highway for any other purpose. The liability of towns, for such injuries, is created solely by statute ; and the only object of imposing the liability is to compel towns to keep highways *safe for public travel.* The decisions in Massachusetts, under a statute not differing essentially from ours, are explicit on this point. In *Richards* v. *Enfield*, 13 Gray, 344, it was decided that " a traveler upon a highway, who stops and ties his horse outside of the limits of the highway, using due care, cannot, if the horse gets loose and runs upon the highway and suffers an injury from a defect therein,

maintain an action against the town for such injury." In *Stickney* v. *City of Salem*, 3 Allen, 374, it was decided that the town was not liable to one " who, while stopping in the highway for purposes of conversation, leans against a defective railing, and is injured by reason of its insufficiency." In *Blodgett* v. *City of Boston*, 8 Allen, 237, it was ruled that if the plaintiff was engaged in play in the highway at the time of the injury, he could not recover. The statute of Massachusetts is as follows : " Highways and bridges shall be kept in repair at the expense of the town  *  *  in which they are situated  *  *  so that the same may be safe and convenient for travelers, with their horses, teams, and carriages, at all seasons of the year." The words " *safety of travelers*," as expressing the object for which towns are obliged to keep railings on the sides of bridges and of such portions of the highway as are raised above the adjoining ground, are contained in Rev. Stat. of 1866, p. 493, sec. 8, which was the statute in force when this accident occurred. "A person must be in the use of the highway for the purpose of travel, in order to be entitled to recover damages on account of its insufficiency." *Sykes* v. *Town of Pawlet*, 43 Verm., 446. "To render a town or city liable for an injury sustained on a highway, it must have been sustained by a *traveler*." *Hawes* v. *Town of Fox Lake*, 33 Wis., 438. When children use a part of the public road *for their sports*, the town or city through which the way passes, is not responsible for injuries received by any of the children so engaged, though the injuries may result from a defect in the road. *Stinson* v. *Gardiner*, 42 Maine, 248. And it is well settled that if a person is using a highway on Sunday, in violation of the statute concerning the observance of that day, and is injured by reason of a defect in the road, he cannot recover. He is not a legal traveler. *Cratty* v. *City of Bangor*, 57 Maine, 423 ; *Bosworth* v. *Swansey*, 10 Met., 363 ; *Jones* v. *Andover*, 10 Allen, 19, 20. The case of *Baldwin* v. *Greenwoods Turnpike Co.* is not in point. Baldwin was a traveler upon the highway. The opinion incidentally recognizes the law as we claim it. The court say, " The statute laws of our state impose upon towns

and corporations the duty to keep their highways and bridges with sufficient railings in suitable repair. This is a positive duty, and the *safety of the traveling community* requires that it should be rigidly enforced." Towns cannot be held responsible for injuries to animals escaping from the premises of their owner upon the highway, and there meeting with an accident, which, if the highway had been in good condition, would not have happened. Such animals are unlawfully upon the highway. The public right to pass and repass would not justify the owner, should an action of trespass be brought against him by the proprietor of the soil. Strictly speaking, such animals are not on a *highway*. It is no *highway* for them, but the soil and freehold of the adjoining proprietor. *Stinson* v. *Gardiner*, 42 Maine, 248; *Stackpole* v. *Healy*, 16 Mass., 33.

PARDEE, J. The statute provides that the town which by law is obliged to maintain any bridge, shall erect and maintain a good and sufficient railing or fence on the side thereof; and that if any person shall suffer any damage in his property by reason of the want of such railing or fence, such town shall pay to him who shall so suffer, just damages.

The court in this case charged the jury as follows: "Your decision upon one question of fact may decide the case, and that is, where these horses were when they started and got beyond the plaintiff's control. Were these horses at the time they took fright and ran away occupying the highway for the ordinary and legitimate purposes of travel? If they were not, if they were hitched upon the plaintiff's land off the highway, and being frightened there got away and ran into the highway and this one was killed, then the town is not liable, and you must render a verdict for the defendants." Of this charge the plaintiff complains, the verdict having been for the defendants.

We cannot accept the broad, unqualified doctrine of the charge, that, disregarding all questions as to care upon the part of the plaintiff and neglect on the part of the defendants, and putting aside all other facts and considerations, the

single fact that the fright of the horse occurred at a point outside of the limits of the highway, alone and of itself bars the plaintiff from a recovery in this action. For, assuming with the defendants that the purpose for which towns are compelled to construct highways and bridges and keep them in good and sufficient repair, is to promote the comfort and convenience and ensure the safety of travelers, that is, of all persons who have lawful occasion to pass over them upon business or for pleasure, yet the word "travelers," as used in this connection, should be interpreted in the light of knowledge common to all, gained from observation and experience, as to the manner in which people are accustomed to use and enjoy highways; so interpreted as to permit a convenient and beneficial use; such use as will make them means for the promotion of the business interests of those who pass over them and at the same time preserve for them the protection of the statute. Of course the passage of the traveler along the highway is not, as a rule, continuous between the extreme points of his journey; the demands of his business oftentimes compel him to withdraw temporarily from the limits of the road; the dwelling-house, the post-office, the store, the grist-mill, the blacksmith's shop, the inn, and the watering trough, quite often stand a little aside, and accessible from the highway; to visit one or the other of these is the occasion for the passage upon it; those who maintain it expect the traveler to draw aside for business or pleasure at these several places and return to it. Indeed, these temporary, perhaps momentary, withdrawals from and stoppages outside of its limits, with the intent to return to it and pursue the journey, are so absolutely necessary to the beneficial and convenient use of it by the public, that they should be considered as necessary incidents to a passage over the road.

And a person who does so draw aside does not by the mere force of that single fact, irrespective of all other considerations, cease to be a traveler in the true and just sense of that term and is not under all circumstances placed beyond the protection of the law, if during the period of such withdrawal, without fault or negligence on his part, his horse becomes fright-

ened and passes from his control upon the highway and is injured by reason of the neglect of the town to provide a sufficient railing to a bridge ; and this doctrine, although not accepted in all jurisdictions, has received the sanction of this court.    In *Baldwin* v. *Greenwoods Turnpike Co.*, 40 Conn., 238, the defendant corporation was charged with the duty of keeping a good and sufficient railing or fence upon the side of a bridge ; this duty it had neglected to perform; the plaintiff's horse became frightened and uncontrollable upon a town road as to which the defendants were charged with no duty or responsibility ; in his fright the horse ran upon private property ; from thence he returned to the town road, and from that ran, without any driver, upon the defendants' turnpike and bridge, and off the side of the latter and was injured.    The court instructed the jury " that if the injury to the plaintiff's horse happened, as claimed by him, through the want of a sufficient railing upon the defendants' bridge, the fact that the accident which in the succession of events was the first cause leading to such injury happened outside the limits of the defendants' road, would not prevent his recovery ; nor the circumstance that the horse in running went entirely off the limits of any highway." This court approved of these instructions.

There should be a new trial.

In this opinion the other judges concurred.