GEORGE W. RING, RESPONDENT, *v.* THE CITY OF COHOES, APPELLANT.

*Municipal corporation — liability of, for accident caused by obstruction in high-ways — for injury occasioned by accident.*

The defendant placed on the west side of Mohawk street, in the city of Cohoes, a hydrant, projecting several inches beyond the curb, with an iron nozzle on the side nearest the street, which projected several inches over the road-bed, at the height of about two feet. On the opposite side of the street the defend-

ant had negligently allowed to accumulate a pile of ashes twenty feet long, ten feet wide and three feet high, the space between the pile and the west curb being about twenty feet.

Plaintiff's horse, which he was driving before a sleigh, took fright and ran along the street in the direction of the hydrant; plaintiff was unable to guide or direct him with precision; at that time a wagon was passing the hydrant in an opposite direction, leaving a space of about twelve feet between it and the hydrant; plaintiff's horse, in passing through this space, struck the hydrant or its nozzle, with the cross-bar of the sleigh, whereby the plaintiff was thrown therefrom and injured. Plaintiff used his best endeavors to guide and control his horse, which was blind, and was guilty of no negligence which contributed to the accident.

This action was brought to recover damages for the injuries sustained.

*Held,* that the facts of the case justified a finding by the referee that the defendant was negligent in allowing the pile of ashes to accumulate and remain in the street, and in erecting and maintaing the hydrant so that it and its nozzle projected into the street, and that the plaintiff was entitled to recover.

That the fact that the plaintiff's horse was blind, and that the accident occurred while it was running away, did not relieve the defendant from the liability imposed by its negligence, so long as it appeared that the plaintiff was blameless and free from any negligence contributing to the accident.

In making improvements in the public streets, and in keeping them in repair, the officers of the municipality are bound to act with due regard to the safety of travelers; and for any neglect or omission of duty in that regard, an action will lie by any person specially injured thereby.

It is the duty of a municipality, bound to construct and maintain highways, to provide for the reasonable safety of travelers in reference to such accidents as may be expected to happen therein; and when a traveler is not in fault, but an injury happens to him, which is the combined result of accident, and of negligence attributable to the municipality because of its omission to keep the road in repair, the latter will be held liable for the damages occasioned thereby.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

This action was brought to recover damages for personal injuries sustained by the plaintiff while driving a horse and cutter upon Mohawk street, in the city of Cohoes. The referee found, among other things: "That Mohawk street was a public highway and street within said city; that at the time of the accident and injury to the plaintiff, hereinafter mentioned, a large pile of ashes and cinders had accumulated upon the westerly side of said Mohawk street, at a point directly opposite the place where said injury occurred, and within the portion of said highway usually traveled

by horses, vehicles, etc.; that said pile of ashes was about twenty feet in length along the length of said street, about three feet high and about ten feet wide, and extended easterly from a point about one foot easterly of the west curb of said street towards the middle of said street to a point about eleven feet easterly from said westerly curb; that said pile of ashes and cinders had been accumulating for some weeks prior to the time of such accident and injury; that the accumulation and existence of said pile of ashes and cinders was well known to the street commissioner of the defendant, whose duty it was to remove the same; that said street commissioner and the defendant negligently allowed said pile of ashes and cinders to remain in said street, and that the same were so placed in said street with the knowledge and consent of said street commissioner and for the use of the defendant; that at the point where said accident and injury occurred, the portion of Mohawk street traveled by teams was thirty feet in width between the curbs; that directly opposite said pile of ashes and cinders; at the time said accident and injury occurred, and partly in the line of the west sidewalk and partly without and extending into the space between the curbs several inches, stood a hydrant, which had there been placed and maintained by the defendant; that upon the side of said hydrant, next the portion of said street traveled by teams, etc., was an iron nozzle which projected several inches over the space between the curbs; that said nozzle was about two feet above the surface of the ground; that on the 6th day of February, 1872, in the daytime, the plaintiff was driving on Mohawk street, at its intersection with Remsen street, about eighty feet distant from said hydrant, with a horse attached to a sleigh in which said plaintiff was seated; that said horse suddenly took fright and started upon a run along Mohawk street in the direction of said hydrant; that said plaintiff was unable to restrain said horse from running, and was unable to guide or direct him with any precision, although he used his best endeavors so to do; that said plaintiff was able to and did, to a certain slight extent, guide and control said horse in the direction in which he moved; that at that time, a wagon loaded with wood, and before which was a team of horses, was coming along Mohawk street from a direction opposite to that in which said plaintiff was moving, and had arrived at a point opposite said pile of ashes and between

the same and said hydrant, and was moving along the side of said pile of ashes, which lay towards the middle of the street; that said wagon was between five and six feet in width; that the space between said wagon and hydrant was about twelve feet wide, and that in passing up said Mohawk street, in the direction in which he was going, the plaintiff, with his horse and sleigh, was compelled to pass between said wagon and said hydrant; that there was sufficient space between said wagon and said hydrant for said plaintiff and his horse and sleigh to have passed in safety, had said plaintiff had complete control of his horse; that within five seconds from the time said plaintiff's horse commenced to run, he reached the space between said hydrant and said wagon and attempted to pass through the same; that in attempting to do so he ran so near to said hydrant that the cross-bar of the sleigh, in which plaintiff was riding, struck against the nozzle of said hydrant, or the portion of said hydrant which projected beyond the curbstone, whereby said sleigh was suddenly stopped and the plaintiff thrown with great force and violence against said hydrant, whereby his nose was broken, his cheek was cut and laid open, and he otherwise greatly injured; that, by reason of such injuries, said plaintiff became sick and disabled for several weeks, and has been permanently disfigured; that said horse so driven by the plaintiff was blind; that the plaintiff used his best endeavors to guide and control the horse he was so driving, and was guilty of no negligence which contributed to the accident or injury hereinbefore described; that the defendant was guilty of negligence in allowing and permitting said pile of ashes and cinders to accumulate and remain in said street, and in erecting and maintaining said hydrant so that the same and the nozzle thereof projected into the portion of the street between the two curbs, and that such negligence, on the part of the defendant, contributed to the accident and injury to the plaintiff above described; and as conclusion of law, that, by reason of the matters aforesaid, the plaintiff was entitled to recover of the defendant the sum of fifteen hundred dollars ($1,500)."

*Samuel Hand*, for the appellant. The so-called negligent acts of the defendant, alleged by the plaintiff and found by the referee, were too remotely connected, if at all, with the accident to have

caused or contributed to it in a legal sense. The proximate and legal cause of the accident was the blindness of the plaintiff's horse, his unmanageability and his running away. (*Marble* v. *City of Worcester*, 4 Gray, 395 ; *Hudson R. R. Co.* v. *Mott*, 1 Robt., 585 ; Shearman & Red. on Negligence, 39 ; *Wilson* v. *Susquehanna Turnpike Co.*, 21 Barb., 68 ; *Austin* v. *New Jersey Steamboat Co.*, 47 N. Y., 75 ; *Lauwen* v. *Gas-light Co.*, 44 id., 459.) The pattern of the hydrant, or its projection a few inches, cannot be held legal negligence at all. There was no testimony whatever that this was not the usual, ordinary and proper method of placing them. (*Dongan* v. *Champlain Co.*, 56 N. Y., 1.) But again, the shape, pattern, form and location of water hydrants were matters within the discretion of the water commissioners. No action lies for the exercise of that discretion, although bad judgment was shown. (*City of Lansing* v. *Toolan*, Alb. Law Journal, Sept. 8th, '77, p. 164 ; *Kavanagh* v. *Brooklyn*, 38 Barb., 232 ; *Mills* v. *Brooklyn*, 32 N. Y., 489 ; *Wilson* v. *Mayor*, 1 Den., 595 ; *Cole* v. *Medina*, 27 Barb., 218.)

*Charles F. Doyle* and *Nathaniel C. Moak*, for the respondent. The city having permitted one-half of its street to be filled with ashes, and built a hydrant with its nozzle into the street on the opposite side, thereby rendered itself liable to one injured in consequence of the defective condition of the street. (*Chicago* v. *Brophy*, 2 Law and Eq. Rep., 224.) The plaintiff was entitled to recover, notwithstanding he was, for some few seconds after his horse started, unable to obtain entire control of him. Had there been no nozzle of the hydrant projecting into the street, he would as it was have passed the ordeal without injury. (*Baldwin* v. *The Greenwood Turnpike Company*, 38 Conn., 238 ; 13 Am. Law Reg. [N. S.], 423 ; *Hunt* v. *Pownal*, 9 Vt., 411 ; *Lower Macungie Township* v. *Merkhoffer*, 71 Penn. St., 276 ; *Hey* v. *The City of Philadelphia*, 2 Weekly Notes of Cases, 465 ; *Newlin Township* v. *Davis*, 1 Weekly Notes, 211 ; *Pittsburgh* v. *Grier*, 10 Harris, 54 ; *Scott* v. *Hunter*, 10 Wright, 194 ; *Sherwood* v. *The City of Hamilton*, 37 Upper Can. [Q. B.], 410.) In the State of Maine, under a statute not unlike ours, it has been in several cases held that the corporation is not liable if there be two efficient, independent proximate causes of an injury sustained by a traveler upon a highway,

the primary cause being one for which the corporation is not liable, and as to which the traveler himself is in no fault, and the other being a defect in the highway. (*Moore* v. *Inhabitants of Abbott*, 32 Maine, 46 ; *Farrer* v. *Inhabitants of Greene*, id., 574; *Coombs* v. *Inhabitants of Topsham*, 38 id., 204 ; *Anderson* v. *City of Bath*, 42 id., 346; *Moulton* v. *Inhabitants of Sandford*, 57 id., 127.) In the State of New Hampshire, under a statute also like ours, the contrary is held. It is there held that where two causes combined to produce the injury, both of which were in their nature proximate, the one being the defect in the highway, and the other some occurrence for which neither party is responsible, that the corporation is liable, provided the injury would not have been sustained but for the defect in the highway. (*Winship* v. *Enfield*, 42 N. H., 197 ; *Clark* v. *Barrington*, 41 id., 44 ; *Tucker* v. *Hunniker*, id., 317 ; *Norris* v. *Litchfield*, 35 id., 271.) In the State of Vermont, under a similar statute, the courts appear to be in unison with the courts of the State of New Hampshire on this question. (*Hunt* v. *Town of Pownal*, 9 Verm., 411 ; *Kelsey* v. *Town of Glover*, 15 id., 708 ; *Allen* v. *Town of Hancock*, 16 id., 230.) In the State of Massachusetts, under a similar statute, the decisions are apparently conflicting. In *Palmer* v. *Inhabitants of Andover* (2 Cush., 600), it was held that the corporation is liable for an injury occasioned by a defect in a highway where the primary cause of the injury is pure accident. But subsequent decisions have shaken it. (*Murdock* v. *Inhabitants of Warwick*, 4 Gray, 178 ; *Marble* v. *City of Worcester*, 4 id., 395.) And still later it has been approved. (*Rowell* v. *City of Lowell*, 7 Gray, 100.) The result of the Massachusetts decisions would appear to be to hold that, if at the time the accident happened, the horses were, and for some considerable time had been, out of the control of the driver, the corporation is not liable. (*Davis* v. *Inhabitants of Dudley*, 4 Allen, 557 ; *Titus* v. *Inhabitants of Northbridge*, 97 Mass., 258 ; *Horton* v. *Taunton*, 97 id., 266, note ; *Fogg* v. *Nahant*, 98 id., 678 ; reported, also, in Withrow's American Cases, 464.) In the State of Wisconsin, where a similar statute exists, the principle of the last mentioned cases appears also to prevail. (*Dreher* v. *Fitchburg*, 22 Wis., 675 ; *Houfe* v. *Town of Fulton*, 29 id., 296 ; S. C., 9 Am. Rep., 568.)

BOCKES, J. :

The right of action rests upon the alleged improper manner of setting the hydrants as to locality. The street opposite the hydrant was obstructed by a pile of ashes which had been accumulating for a considerable period of time ; but this fact was of importance only as the ash-pile narrowed the surface of the street, open to travel at the place where the injury occurred; and hence, to some extent, bore on the question whether the road, in view of the manner in which the hydrant was placed, was, at that point, reasonably safe for public travel.

The plaintiff was driving along the street, seated in a sleigh, when the horse took fright, became unmanageable, so that the plaintiff was unable to restrain or guide it with any precision. The horse ran, at a slight angle with the street, toward the hydrant ; in passing which the cross-bar of the sleigh, attached to and connecting the thills, struck it, or its nozzle, and the plaintiff was thrown from the vehicle and seriously injured. The hydrant stood partly within and partly without the line of the curbstone, with its nozzle further projecting several inches into the roadway. The referee found that the defendant was guilty of negligence in erecting and maintaining the hydrant in such locality and position, and that such negligence contributed to the injury complained of; and further, that the plaintiff was free from fault in all respects. As regards the form of the hydrant, and as to its position in the street, there is no controversy on the facts ; and the referee finds, upon sufficient evidence to sustain the findings, that the cross-bar of the sleigh struck against the nozzle of the hydrant, or against that portion of the hydrant which projected beyond the curbstone into the roadway of the street. The street in the vicinity of the hydrant, and its narrowed condition by reason of the ash-pile, were described by the witnesses with particularity ; as were also the pattern of the hydrant and its location with reference to the curbstone, and its proximity to the ash-heap. As to the general facts of the case there seems to be no dispute of any moment. The question then was, and this question, it seems, still remains for us to consider even although it should rest on conflicting evidence (*Godfrey* v. *Moser*, 66 N. Y., 250), whether the roadway was reasonably safe for travel in its surface, margin and muniments ? (*Glidden* v. *Town of*

*Reading*, 38 Vt., 52.) And this must be so when the particular highway and its alleged obstructions or imperfections are given in evidence from which negligence may or may not be deduced. The obstruction here complained of was at the extreme margin of the road-bed; and this fact was and is an important one to be considered, in determining whether the street was reasonably safe for public travel. But it must be held in mind that the defendant, having the right to control the entire width of the street, and to keep it free from obstruction from curbstone to curbstone, had a corresponding duty in that regard. (*Morse* v. *Richmond*, 41 Vt., 435.) The duty also in a city would be commensurate with the increased density of travel. (*Fitz* v. *City of Boston*, 4 Cush., 365; *Bryant* v. *Inhabitants of Biddeford*, 39 Maine, 193.) Undoubtedly in this case there was a fair question, for the trial court on the evidence submitted, whether the defendant was or was not negligent in regard to the matter of complaint. In *Clemence* v. *City of Auburn* (11 N. Y. S. C. [4 Hun], 386), the obstruction or imperfection in the street (a slight deflection in the sidewalk) seems almost insignificant as a ground of negligence, yet the court held a nonsuit improper and set it aside. This decision was affirmed in the Court of Appeals. (66 N. Y., 334.) It cannot, as we think, be held in this case that the defendant was absolutely free from negligence and consequent liability; nor that the findings of the referee to the contrary of this were without sufficient support on the evidence. As to the question of contributory negligence on the part of the plaintiff, there is an absence of all proof showing that he was in fault; and the conclusion of the referee that he was free from fault is well found. It is urged that there is no proof that the location of the hydrant in the street, partly within the line of the curbstone, with its nozzle further projecting over the road-bed, was unusual or out of the ordinary mode of setting them; nor that any like injury had ever before occurred from this or any similar cause. It was enough to show the situation and surroundings of the hydrant, and the circumstances attending the injury; then the question would arise whether the hydrant was properly placed with a view to public safety. And in case it should be found that it was improperly located, so as to constitute a nuisance in the highway, an action would lie for an

injury thereby occasioned, as well for the first of such injuries as for any subsequent one. The party would not be barred of his right of action until he could show a prior injury from the same or from a similar cause. This case differs from that of *Dougan* v. *The Champlain Transportation Company* (56 N. Y., 1), in this, that there it was shown affirmatively that the nonfeasance complained of was in accordance with the general custom in similar cases, hence not against common prudence. The case in hand more resembles *Blanchard* v. *Western Union Telegraph Company* (60 N. Y., 510), where a recovery was upheld, although the injury was the first that had occurred from the alleged cause; and notwithstanding other parties had frequently passed the obstruction without injury. Nor was the defendant here protected by reason of the judicial character with which its agents who placed the hydrant were clothed. This point was settled in *Clemence* v. *The City of Auburn* (66 N. Y., 250), against the defendant. This decision is but one of many to the like effect. (*Nims* v. *City of Troy*, 59 N. Y., 500, and cases cited on page 508.) These cases hold, that in making improvements in the public streets, and in keeping them in repair, the duty becomes imperative on the officers of the municipality to act with due regard to the safety of travelers, and that for any neglect or omission of duty in that regard an action will lie at the suit of any party specially injured thereby.

It appears that the horse was blind and was running away on the occasion of the accident, and the question is put, with fairness of statement and not without great force, whether the defendant was bound to provide a safe street for a blind runaway horse? It must be held in mind that there is no proof that the horse was vicious or addicted to running away, and that the plaintiff was free from fault in his management of the animal. Then the answer to the question is, that the defendant was bound to see to it, that the street was unobstructed for public use, or in more precise language, that it was reasonably safe for general travel. The plaintiff had a right to drive a blind horse on the public street; and if, without any fault attributable to him, he was injured while driving such animal, through the culpable misfeasance or nonfeasance of the defendant, the latter would be as much responsible to the former as if his horse had been entirely sound. (*Sleeper* v. *San-*

*down*, 52 N. H., 244.) For any thing that is made to appear with certainty, the same results, as in this case occurred, would have followed had the plaintiff's horse been without the infirmity of blindness. It is a common and true remark that a frightened horse running away is but a "blind brute." The mere fact that the horse was blind should not bar the plaintiff's right of action, but doubtless this should be considered in determining the question of prudent conduct on his part. Under many circumstances, if not under all, a person driving a blind horse is bound to the exercise of increased vigilance and care in its use. But the mere fact that a person is driving a blind horse when an injury occurs by reason of a defective highway, will not deprive him of the redress to which he would be otherwise entitled. (*Davenport* v. *Ruckman*, 37 N. Y., 568.) Of course he must be blameless in the management of the animal, otherwise he could not recover. Nor will the fact that the horse was running away at the time the injury occurred, necessarily defeat the plaintiffs action therefor. But in Maine the rule is, that in order to a recovery in a case like this, it must be proved that the injury was occasioned *solely* by the defendant's negligence, and not by such negligence combined with another cause (as the fright and running away of the horse), for which it was not responsible. (*Moore* v. *Abbot*, 32 Maine, 46.) In this case Chief Justice SHIPLEY said that to establish his action, the plaintiff must prove that the injury was occasioned by the default of the defendant alone, and not by that default and some other cause, for which the defendant was not responsible. (See, also, *Farrar* v. *Inhabts. of Greene*, 32 Maine, 574; *Anderson* v. *City of Bath*, 42 id., 346; *Bigelow* v. *Reed*, 51 id., 325; *Moulton* v. *Inhabts. of Sanford*, 51 id., 127.) It ought perhaps to be here observed that this rule was not deemed settled in this State (Maine), until the decision of Moulton's case (*supra*); and then only by a divided court, the chief justice delivering a very able dissenting opinion, wherein the subject is fully considered. There are cases in Massachusetts also substantially in accordance with the rule laid down in the courts of Maine. (But see *Palmer* v. *The Inhabts. of Andover*, 2 Cush., 600.) In New Hampshire, however, the law is settled that when the plaintiff is not in fault, but the injury is the combined result of accident and of the defend-

ant's neglect to repair the road, the latter will be held liable. (*Winship* v. *Enfield*, 42 N. H., 197.) In this case the learned judge, speaking for the court, says: "The greatest precaution and the most penetrating foresight cannot prevent casualties by the safest modes of conveyance. Accidents will occur. A nut or bolt may drop, a trace may become disengaged, or a horse take fright and become unmanageable; it is under circumstances like these, when life and limb are imperiled, that the traveler who is in no fault himself, is entitled, if ever, to the benefit of a sufficient and unincumbered highway. The injuries are few that are received upon highways, however defective, that are not induced, in a greater or less degree, by some previously unknown defect, either in the carriage or harness, or by the fright of the horse, or some similar cause, usually termed accidental; and to say that under circumstances of danger and peril from those and other accidental causes, the traveler is not entitled to the safety that a highway unincumbered and without defects, that is, a highway made reasonably safe against the occurrence of such accidents as these, would afford at a time when, of all others, he has the greatest need, would seem to be repugnant to reason and common sense." (See also *Clark* v. *Barrington*, 41 N. Hamp., 44; *Tucker* v. *Henniker*, 41 id., 317.) The decisions in Vermont accord with those in New Hampshire. (*Hunt* v. *Town of Pownal*, 9 Vt., 411; *Kelsey* v. *Town of Glover*, 15 id., 708; *Morse* v. *Town of Richmond*, 41 id., 435, on page 442; *Whitcomb* v. *Town of Fairlee*, 43 id., 671, on page 675.) And in Connecticut, in the case of *Baldwin* v. *Greenwood Turnpike Company* (40 Conn., 238), it was decided that a traveler, sustaining an injury by reason of a defect in a highway, attributable to the negligence of a corporation bound to maintain it, was not barred of his right to recover by reason of the fact that on his own part an accident had contributed to the injury, if it was in no way attributable to his own negligence. In this case the plaintiff's horse, when running away, fell over the side of a bridge, by reason of a defective railing which the defendant was bound to keep in repair, and was injured. The court, on a careful examination of the subject in all its bearings, held the defendant liable, laying down the law as above stated. The court remarked as follows: "This brings into consideration the question whether the defendants are relieved

from liability for an injury caused by their negligence, combined with an accident for which no responsibility attached to either party," and it was said in the examination of this question, "the plaintiff performed no negligent act, nor can we see that he failed to do any thing by the performance of which the injury might have been avoided; he was providentially prevented from acting;" and further, the court adopted with approval the following language from *Hunt* v. *Town of Pownal* (*supra*): "It is to guard against these constantly recurring accidents that towns are required to guard in building highways. The traveler is not bound to see to it that his carriage and harness are always perfect, and his team of the most manageable character and in the most perfect training, before he ventures upon the highway." (See also *Ward* v. *Town of North Haven*, 43 Conn., 148, on page 155.) The cases in the three States last above referred to, hold that the traveler is bound only to the exercise of ordinary care and prudence. In Pennsylvania also the rule is the same as in Vermont, Connecticut and New Hampshire. (*Lower Macungie Township* v. *Merkhoffer*, 71 Penn., 276; *Hey* v. *Phil.*, 81 Penn., 44.) The case of *Manderschiel* v. *City of Dubuque* (25 Iowa, 108) is also in point; as is also *Docher* v. *Town of Fitchburgh* (22 id., 675), *Houfe* v. *Town of Fulton* (29 id., 675), *Havens* v. *Town of Fox Lake* (33 id., 438). The result of all the decisions above cited, except those in Maine, are, as I understand them, in accordance with the rule laid down in *Kelsey* v. *Town of Glover* (*supra*), that it is the duty of a municipality, bound to construct and maintain highways, to provide for the reasonable safety of travelers in reference to such accidents as may be expected to happen thereon, and that when a traveler is not in fault, but an injury happens to him which is the combined result of accident and negligence, attributable to the municipality by an omission to keep the road in repair, the latter will be held liable. We are not cited to any case in our own State wherein this precise question has been considered. There were some remarks in *Wilson* v. *Susquehanna Turnpike Company* (21 Barb., 79) bearing upon it, but the question was not there decided. The case of *Clark* v. *Union Ferry Company* (35 N. Y., 485) may perhaps have a bearing on it. In this case the plaintiff took a young horse on to the ferry-boat, and when attempting to drive him off the boat he reared up, became frightened, backed against the chain at the rear

of the boat, which was defective and an insufficient protection, fell into the water, and was drowned. A recovery by the plaintiff was sustained. PECKHAM, J., speaking for the court, said: "An individual has a right to take a young horse on a ferry-boat. He may be timid or easily frightened, and yet the owner is guilty of no negligence in taking him on the boat. He must there exercise proper care in the management of the horse, *and that is all that can be required of him.* If the horse be injured or lost through the negligence of the defendant, the latter is liable." But the precise question discussed in the cases above cited was not here raised, as will be seen by a casual examination of this case. In *Wyckoff* v. *Ferry Company* (52 N. Y., 32) a recovery was sustained under a similar state of facts. In *Vincett* v. *Cook* (11 N. Y. S. C. [4 Hun], 318) the wall of the defendant's house being in a dilapidated condition, was blown down during a storm of unusual violence, falling upon the plaintiff. A recovery by the latter for the injury was sustained. In *Cox* v. *Westchester Turnpike* (33 Barb., 414) the plaintiff's horse was injured on the highway. It was held that negligence on the part of the defendant, the turnpike company, from which the injury resulted, and the exercise of ordinary care by the plaintiff, gave a right of action. (See, also, *Center* v. *Finney*, 17 Barb., 94.) It has been repeatedly held that where an injury is occasioned by the joint negligence of several, the party injured being himself without fault, may have his action against all or either of the persons causing the injury. ( *Webster* v. *H. R. R. Co.*, 38 N. Y., 260 ; *Sheridan* v. *R. R. Co.*, 36 id., 39 ; *Colgrove* v. *R. R. Co.*, 20 id., 492 ; *Spooner* v. *R. R. Co.*, 54 id., 230.) Nor will the comparative degrees of culpability affect the liability of either. (*Barrett* v. *R. R. Co.*, 45 N. Y., 628.) Nor will it make any difference that the negligent acts were separate and independent of each other. (*Slater* v. *Mersereau*, 64 N. Y., 138.) If the negligence of a third party would not discharge another from liability whose negligence contributes to the injury, it is difficult to see on what principle an accidental circumstance, for which no one is responsible, can work that result. Undoubtedly the weight of authority is in favor of the rule of law laid down in those States other than Maine. It seems the more reasonable doctrine, and, as we think, it accords with sound principle. It seems but just and right that when the

plaintiff is without fault, and the injury is the combined result of pure accident and the defendant's negligence, the latter should be held liable. Highways should be constructed, protected and guarded in reference to possible accidents, and they should be made reasonably safe to travelers in case accidents should happen, as they must; such accidents as often do occur and may be expected occasionally to occur on highways. So where the antecedent cause is a pure casualty, then, as was said in one of the cases cited, the defect causing the injury must be deemed the *causa proxima.*

If correct in the above conclusions the judgment appealed from should be affirmed.

Judgment affirmed, with costs.

LEARNED, P. J., and BOARDMAN, J., concurred.

Judgment affirmed, with costs.