The plaintiff asks for a new trial on a number of grounds.
It is claimed that there was error in giving a part of the general charge of the court as to what would be actual notice to the city of the hole in the road. The court used the following language:
“Actual notice is where the city’s proper officers or agents have notice of the defect. Notice to a- police officer is sufficient if he knew of the hole sufficiently long before the áccident to report it, and if the police made it a custom to report defects in the streets to the department having the repair of streets in charge, and if such department made it a custom to receive such reports from the police.”
Counsel for plaintiff claims that there would be actual notice to the city if the policeman knew of the hole, and that the qualifications in the charge as to custom were erroneous and prejudicial. The court does not think that the charge was wrong; and even if it was, considering the testimony, the error was not prejudicial.
*8 ' The question whether or not notice to a policeman is actual notice to the city has been raised so frequently in our courts that it is strange there is no Ohio decision settling the question; but counsel say there is not, and the court knows of none.
At the time this stallion was killed (1900) it was made the duty of the police of this city “to remove nuisances existing in public streets, roads,” etc., by Section 1878, Revised Statutes, and also Section 1934, Revised Statutes. A hole in the street is a nuisance (46 O. S., 442). It was made the duty of the city by Section 2640, Revised Statutes, to keep .the streets free from nuisance.
Now, were the police the agents of the city at that time to report holes in the streets? If so, were they the agents of the city for this purpose by virtue of some law, or by virtue merely of their office as policemen? The court thinks they were the agents of the city for this purpose by reason of a custom 'to use them as agents in this way, which custom, as will presently be pointed out, was established by the testimony in this ease, and it was upon this testimony that the charge given was based; but the court does not think they were agents of the city to take notice of holes in the street either because of any law or because of their mere office as policemen.
The city in the execution of its governmental powers is compelled by statute to have policemen, firemen, etc., but in appointing them the city is only carrying out a political duty, and they are not the agents of the city but of the state. Shearman & Redfield on Negligence, Section 291 (5th Ed.), with cases cited.
“Police officers can in no sense be regarded as servants or agents of the city. Their duties are of a public nature. Their appointment is devolved upon cities and towns by the Legislature as a convenient mode of exercising a function of government, but this does not render the ’cities or towns liable for their unlawful or negligent acts.” Bigelow, C. J., 82 Mass., 172.
At the time of this accident the appointment, regulation and government of the police force of the city of Cincinnati was vested in the mayor and board of commissioners appointed *9 by the governor of Ohio (Section 1870, Revised Statutes). The men were appointed by the mayor with the approval of the board (Section 1871, Revised Statutes); and the mayor had full control over the organization and discipline of the force (Section 1875, Revised Statutes). In case of emergency the mayor had the power to call out the whole force (Section 1877, Revised Statutes); and the specific duties of the mayor and the police in regard to preserving the public peace and safety were laid down in Section 1878, Revised Statutes. This latter section is the one referred to above, which requires the police, among other duties, to remove nuisances from the streets.
Under these statutes the commissioners and the maydr have the right to regulate the police and direct them in the discharge of their duties, but the city has no such power. It is true the mayor is a city official, but his management of the police is conferred upon him by statute, and he is not amenable to the city for any violation of his duty in this respect, nor could the city by ordinance direct him in his control of the police. The police commissioners are certainly not authorities of the city. They are a body of state officers, although they exercise authority within the city for the purpose of maintaining public peace and order (Altvater et al v. Mayor, etc., of Baltimore, 31 Md., 462). Until the city takes some action to make the police its agents they are the agents of the state only in carrying out the duties imposed by these statutes.
But the police may be the agents of the city as well as of the state, without doubt. The city may authorize them to act as its agents by an ordinance or by custom. No peace officer of whatever sort, however, is an agent of a city to notice a defect in a street merely by virtue of his office. There are no cases to support such a view.
That a city may make, the police its agents by an ordinance appears from Bowman v. Tripp, 14 R. I., 242, where to establish the negligence of the authorities of the city of Providence the plaintiff introduced in evidence the police regulations adopted by the town, which made it the duty of the police patrolmen to note and report without delay all obstructions in the streets.
*10 Again, custom may make the police the agents of the city -with regard to defects in the streets of the city to such an extent that notice to a policeman is notice to the city. Thus notice to a policeman of the defective condition of a sidewalk is notice to the city where the policemen have for several years been charged with the duty of reporting defects in the sidewalks by, writing in a book kept for such purpose, with the knowledge of the superintendent of streets, who resorted to such reports for information. City of Joliet v. Looney, 159 Ill., 471.
The authorities cited in support of the foregoing views have been found by the court in the pursuit of its own investigation of the question, and it is possible that a more exhaustive search would reveal additional authorities. Those relied upon have impressed the court as being sound, however.
Counsel for the ‘ plaintiff in support of their view that this charge of the court was error, have cited 91 N. Y., 144; 102 N. Y., 218; 152 N. Y., 222; 10 Col., 377, and 89 Mo., 209. The court finds a statement in Elliott on Roads and Streets, page 463, to the effect that “where the police are charged with the duty of removing obstructions from the streets, notice to the police on duty of an obstruction is sufficient”; and the author in support of this statement cites four of the above cases given by counsel for plaintiff, with the addition of one other ease, 100 N. Y., 15. From the force with which junior counsel for plaintiff has insisted upon the correctness of his view of this question, the court is inclined to conclude that these cases comprise about all, if not all, the decisions that can be found to substantiate his claim. The court has read all of these cases, and in its opinion not one of them supports the claim of counsel for plaintiff. Moreover, the assertion in Elliott that where the police are charged with the duty of removing obstructions from the streets notice to a policeman is notice to the city, is of no value unless we understand by whom the police are to be charged with this duty. From the cases cited in his note he must mean when the police are charged by the city authorities with such a duty they become the agents of the city for the purpose of carrying out the duty. It can not be supposed, that he *11 means to say that where the police are charged by a statute with the duty of removing nuisances, as they are in this city, that notice to a policeman is notice to the city, for none of his authorities support such a view. These authorities will be briefly touched upon.
In the case of Rehberg v. New York City, 91 N. Y., 137, much relied upon by plaintiff, it was held that notice to a police officer is notice to the city. In that case the police were charged by statute to remove nuisances, and this section of the statutes was “embraced in the rules for the government of the police, and the attention of the members particularly directed to it.” But that decision is based in part on the fact that the city of New York had by ordinance forbidden obstructions such as caused the damage in that case.
In Cincinnati it is true the statute requires the police to remove nuisances (Section 1828, Revised Statutes, supra), and it is also true that this section is embraced in the rules for the government of the police (in their manual, although this was not proved by plaintiff); but there is no ordinance in Cincinnati with reference to holes in the streets. If there were such an ordinance, and it had been proved in the case, since the last lines of Section 1878, Revised Statutes, make it the duty of the police “to enforce all ordinances of the city council,” it is the opinion of the court that the police would become the agents of the city in enforcing this ordinance, and notice to an officer of a hole in the street would be notice to the city.
In Goodfellow v. New York, 100 N. Y., 15, the city had passed an ordinance requiring police officers to inspect cross-walks, and an injury being caused to the plaintiff by a defect in a crosswalk, notice to a police officer was held to be notice to the city.
In the ease of Twogood v. New York, 102 N. Y., 216, where an ordinance required the police to report defects in the public ways, and it was the custom to send these reports to the corporation attorney, a charge that this was not notice to the city was held to be error.
The case of Farley v. The Mayor, etc., New York, 152 N. Y., 222, is of no value one way or the other; for the court merely *12 says in the text, “what the policeman knew the city is chargeable with knowing after the lapse of a reasonable time to enable the information to be communicated by them to their superiors.” This is all that the court says, and is too brief for us to know whether the court relied on statute, ordinance or custom. If the court intended to follow the New York cases just referred to, it meant that' where a policeman was charged by ordinance or custom with the duty, he is the agent of the city in carrying out that duty.
It was held in the case of Carrington v. St. Louis, 89 Mo., 208, that knowledge of a policeman was notice to the city; but this was because of a statute making the police a department of the city government. The syllabus says: “The police force of the city of St. Louis constitutes a department of the city government, and a policeman of the city is an officer and agent thereof”; and the court in the text points out the difference between a case where the police force is part of the city government as in St. Louis and a case like Altvater v. Mayor, etc., 31 Md., 462, supra, which holds that a policeman is not an officer of the city, there being no law making him such. The Missouri court bases its decision entirely on the Missouri statute, and evidently approves the holding in the Maryland case that police officers are not city officers.
City of Denver v. Dean, 10 Col., 375, holds that personal knowledge of an officer of a defect in the street is actual notice to the city where an ordinance charges the chief of police with looking after defects in the streets.
Thus it will appear from all of these cases relied upon by plaintiff and by Elliott, that notice to a policeman of a nuisance in the streets of a city is notice to the city only where the city has made the police its agents in this respect, either by an ordinance or by custom. There is no authority, therefore, for the claim of plaintiff’s counsel that the court should have charged the jury in this case that if a policeman had notice of this hole in the road this amounted to notice to the city.
But even if it be conceded for the sake of argument that the court is wrong in this conclusion, still the error in not giving *13 such a charge would not be prejudicial in ‘view of the evidence in this ease.
William Sandman, a policeman, testified that about a week before this stallion was killed he reported this hole to his superior officer; and further testified as follows:
“Well, whenever we would find any dangerous places on the streets or sidewalks, sometimes, if the places were not too dangerous, we would wait until we get off duty and report it to the officer in charge. If the officer perhaps was busy he would tell us to call up such and such a department which had charge of It. We would go to the telephone and call up the department and tell them of the danger in the street or in the sidewalk. ’ ’
He also testified that this had been the custom of the police department for at least nine years to his knowledge. All this is exceedingly strong circumstantial evidence tending to show that the city street department was accustomed to accept notice from the police of holes in the street; that is, if the police for years had been in the habit of giving such information, it is not conceivable that the street department had been in the habit of refusing to receive it during all that time. There being no evidence to the contrary, it may be said that the evidence conclusively proves that such a custom existed on the part of the police to give and on the part of the street department to receive such information; so that the charge of the court that if such a state of affairs existed then the city had actual notice of the defect in this case, really left no room for the jury to find otherwise than that the city had actual notice of this defect.
The next error alleged by plaintiff which the court will take up, is in permitting the defendant to call a horse dealer to testify as to the propensity of a two year old stallion for jumping fences, particularly at the time of the year when this stallion was killed.
In the first place, the admission of opinion evidence on a matter not altogether one of common knowledge is largely discretionary with the court, and if it thinks the testimony of one having expert knowledge on the subject would aid the jury *14 it may be admitted though on a question not really requiring expert testimony. Railway v. Terry, 14 C. C., 536.
In the next place, why should not the propensity of a stallion to jump fences be the subject of expert testimony? How many ordinary men in a city know that a stallion from two to three years old is particularly breaehy, that is, inclined to jump fences ?
Whatever knowledge can only be gained by experience is properly the subject of expert testimony. Whatever propensities other stallions of that age usually have this stallion was likely to have, for in the law the same rule is applied to horses as to things; that is, the law holds that all things of a like sort usually follow the same rule of action. Thus it may be shown that one loom works all right as tending to prove that another loom of substantially the same construction probably works all right (128 Mass., 291). And if it be shown that several horses have taken fright at an object, it is considered reasonable for another horse to take fright at the same object. Such cases are common. Quite a different rule is applied to human beings, for the same man is not even supposed to always display the same propensity. He may have been negligent on a number of occasions in the management of a tram car, but these facts can not be shown in order to argue from them that he was probably negligent on the occasion in question.
In conclusion on this point, the admission of this testimony would appear to be proper according to the holding in Folsom v. Concord, 38 Atlantic, 209, where it is held that evidence of the conduct of horses in general in the presence of moving trains is competent to show how a particular horse would likely act in a similar situation.
Coming to another point which is claimed by plaintiff as an error, the court refused the following charge:
“Upon the question of alleged negligence of the plaintiff, I charge you that it is not contributory negligence to permit a stallion colt of the age of two years to be in a pasture surrounded by a fence reasonably sufficient to restrain such stock.”
*15 This charge is misleading, because the colt had jumped out of the pasture about a month before, according to the testimony of the plaintiff’s hired man. To say that plaintiff was not negligent if he kept up a fence reasonably sufficient to restrain a stallion colt of the age of two years, does not apply to the case of a particular colt which has jumped the same fence once before. This matter of contributory negligence of the plaintiff was carefully taken care of by the court in its general charge. The question of the contributory negligence of the plaintiff was ably discussed by counsel on both sides at much length, and a large number of cases were cited.
It was contended by counsel for the defendant that this stallion was unlawfully at large, b’oth according to the common law and according to Section 4201, Revised Statutes, which forbids any stallion “to go or be at large;” and counsel cited in support of his view: 8 Allen, 237; 13 Gray, 344; 66 Iowa, 438; 43 Conn., 148; 73 N. Y., 365; 4 Allen, 557; 57 Mo., 156; Elliott on Roads (2d Ed.), Section 420; Dillon (4th Ed.), Section 1020; Dearing on Negligence, Section 191; Shearman & Red-field on Negligence, Section 346 and Section 350a (note), and 34 Southeastern, 778. Counsel for plaintiff, on the other hand, contended that the common law doctrine does not hold in Ohio, and it is not unlawful by reason of the common law, for an animal to run at large; citing 3 O. S., 172, 182, and 4 O. S., 474. Counsel for plaintiff also contended that Section 4202, Revised Statutes, forbidding persons to suffer animals to be at large, means that a person must use reasonable care to restrain his animal from running at large, claiming that this view is upheld in 24 O. S., 48, 56, 58, and that this same reasoning should be applied to Section 4201, Revised Statutes, the section referring to stallions. Counsel for plaintiff cited further in support of his views: 34 O. S., 583; 12 C. C., 529; 46 O. S., 272; 41 O. S., 465; 3 Col., 19; 40 Conn., 238, and Williams on Municipal Liability, page 172.
After listening to the exhaustive arguments of counsel on both sides the court adopted the view of counsel for plaintiff and concluded that the plaintiff was not guilty of contributory *16 negligence merely because his stallion happened to be at large, •but that the owner is only bound to use ordinary care in restraining a stallion.
E. W. Kittredge and Dudley V. Sutphin, for the plaintiff.
Albert IT. Morrill, for the defendant.
The jury were carefully put on their guard by the general charge of the court not to find the plaintiff guilty of contributory negligence merely because the statute forbid his stallion to be at large; so that the plaintiff has no ground to complain because of the refusal of this special charge, particularly as it was not good law.
It will be impossible to take up all the points raised by counsel for plaintiff, but the motion for a new trial will be overruled.